UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YUBO MIAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 24 C 01345 |
| | ) | |
| UNITED AIRLINES, INC., | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Yubo Miao, a United States citizen of Chinese descent, brings this suit against Defendant United Airlines, Inc. ("United"), under Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d, and 42 U.S.C. § 1981, after he was removed from a United flight for allegedly failing to comply with the instructions of a United flight attendant.

Before the Court is United's Motion to Dismiss Miao's Complaint. For the following reasons, United's Motion to Dismiss is granted.

**BACKGROUND**

The following facts come from the Complaint and are assumed true for the purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The Court accepts as true well-pleaded facts and draws all reasonable inferences in Miao's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

In June 2023, Miao was aboard a United flight from Chicago, Illinois to San Diego, California. During the boarding process, a flight attendant asked Miao to remove his lunchbox from the overhead storage compartment and to place it under his seat. Instead, Miao placed the lunchbox on the empty seat beside him. This prompted the flight attendant to ask Miao again to put the lunchbox underneath his seat. Miao informed the flight attendant that since the lunchbox had food, he wanted to wait until the other passenger arrived to place the food under his chair. When the flight attendant asked Miao to put the lunchbox under his seat a third time, he complied. Shortly after, a supervisor approached Miao and informed him that he needed to be removed from the plane because the flight attendant claimed that Miao hit her. Miao denied the allegations but exited the aircraft without issue.

During this time, another Caucasian passenger had a similar sized bag in the overhead storage bin. The Caucasian passenger was not approached by a flight attendant or removed from the aircraft.

Miao submitted a complaint to United about the racial discrimination he experienced onboard the flight. In response, Miao received correspondence from United, stating that he was banned from flying on its airways until the airline made a decision about Miao's complaint. After conducting their investigation, United removed Miao from their no-fly list but found that Miao made unwanted physical contact with the airline attendant. Miao was warned that any similar behavior in the future would

2

result in "serious consequences." Miao's complaint regarding the racial discrimination he experienced was not addressed by the airline.

Afterwards, Miao submitted an Air Travel Service Complaint to the Department of Transportation. Miao also sent United a letter, demanding that the airline address the discrimination he experienced and compensate him for his suffering. At some point after this correspondence, United retaliated against Miao when he tried to board another United flight. Miao was not allowed to check in for his flight and was scrutinized by a United employee for 30 minutes.

On February 16, 2024, Miao filed his Complaint against United for race and national origin discrimination under Title VI and 42 U.S.C. § 1981. United seeks to dismiss both of these claims under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the Complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotations omitted).

## DISCUSSION

I.  **Count I: Violation of Title VI of Civil Rights Act of 1964**

Title VI prohibits discrimination on the basis of race, color, and national origin by any program or activity receiving federal assistance. 42 U.S.C. § 2000d. To state a claim under Title VI, Miao must sufficiently allege (1) that he was intentionally discriminated against on the grounds of his race or national origin and (2) that United is a recipient of federal financial assistance. *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 850 (N.D. Ill. 2021). "To adequately plead discrimination a plaintiff must allege factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014) (internal citations omitted). Miao must also plausibly allege that he is a beneficiary of, applicant for, or participating in a federal funded program. *See Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980); *see also Allen v. Bd. of Trs. Rock Valley Coll.*, 2021 WL 4034067, at *8 (N.D. Ill. 2021).[1]

---

[1] In recent years, some courts and other Circuits have moved away from the Seventh Circuit's holding in *Simpson* (known as the "*Simpson* Doctrine"), finding it inconsistent with the Supreme Court's ruling in *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479 (1998). *See e.g. Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 715 (4th Cir. 2014) ("Title VI does not require that an injured party be the intended beneficiary of federal funds."); *see also Alexander v. Hunt*, 2018 WL 3801240, at *8 (D. Vt. 2018) ("In the wake of NCUA, a number of district courts have acknowledged that Title VI plaintiffs need not allege that they are the intended beneficiaries of any federally funded project in order to establish Title VI standing.") However, this Court has consistently followed *Simpson* and will continue to do so here. *See Collins v. Ctrs. for Medicare and Medicaid Servs.*, 2025 WL 599630, at *3 (7th Cir. 2025); *Veljkovic v. Bd. of Educ. of City of Chi.*, 2020 WL 7626735, at *4 (N.D. Ill. 2020); *Shebley*

Miao alleges that he has recourse under Title VI because United received federal funding through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to assist with employee retention during the SARS-CoV-2 ("Coronavirus" or "COVID-19") pandemic. At issue here is whether Miao was an intended beneficiary of the financial federal assistance United received for COVID-19.

Miao concedes that the purpose for the federal funding received by United was for employment retention. However, Miao points to a section of the CARES Act which states that the Department of Transportation could temporarily require an air carrier that receives CARES Act funding "to maintain scheduled air transportation service deemed necessary to ensure services to any point served by the carrier prior to March 1, 2020." Dkt. # 32, at 4. This, Miao argues, shows that the intended beneficiaries for the CARES Act funding were also the passengers because they are the only beneficiaries of an airline maintaining their transportation services. However, this expanded interpretation is unsupported.

Upon review of the CARES Act, it is evident that the CARES Act was enacted for the purpose of assisting companies in retaining their employees and overall economic stabilization during the COVID-19 pandemic. Section 9044 of the CARES Act, highlighted by Miao, is contained under a section titled "Economic Stabilization and Assistance to Severely Distressed Sectors of the United States Economy." The

---

*v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019); *Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, 2005 WL 910732, at *2 (N.D. Ill. 2005).

majority of the subsections within this section apply to companies impacted by COVID-19, not consumers or the general public. The few sections that do apply to consumers unambiguously refer to them within the section.

Section 9044 of the CARES Act does not directly refer to consumers. The plain language of the statute also does not support Miao's claim that consumers were the intended beneficiary of this subsection. The relevant section asks the Secretary of Transportation to consider the need to maintain the healthcare system and pharmaceutical supply chains when considering whether to exercise the authority granted by the CARES Act. Thus, ensuring that the healthcare system is not interrupted appears to be the targeted goal behind this subsection.

Further, even if the subsection was interpreted to include consumers as intended beneficiaries, it would not help Miao's claims. As United points out, the authority granted under Section 9044 terminated on March 1, 2022, over a year before Miao was removed from the United flight.

At any rate, Miao cannot amend the Complaint through arguments in a response brief. *See U.S. ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 486 F. Supp. 3d 1210, 1219 (N.D. Ill. 2020) ("It is an axiomatic rule that a plaintiff may not amend his complaint in his response brief") (internal quotations omitted). While Miao points to Section 9044 to show that he was an intended beneficiary, the Complaint only states that United received federal financial assistance through the CARES Act "in order to retain employees during the Coronavirus pandemic." Dkt. # 1, ¶ 39. The Court can only

6

consider the allegations made in the Complaint and not any subsequent arguments made in Miao's response brief.

Miao has failed to sufficiently plead that he was an intended beneficiary of the federal financial assistance given to United through the CARES Act. As such, Count I of the Complaint is dismissed without prejudice.

## II.     Count II: Section 1981

Section 1981 prohibits private actors from discriminating on the basis of race against those seeking to make and enforce contracts. *Petrovic v. Enter. Leasing Co. of Chi.*, LLC, 513 F. App'x 609, 610 (7th Cir. 2013). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To support a claim under Section 1981, Miao must sufficiently allege that (1) he is a member of a racial minority, (2) United intended to discriminate against him on the basis of race, and (3) United's discrimination interfered with Miao's rights under Section 1981. *See Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005). Miao alleges that he is an Asian-American, which satisfies the first element. Here, a contract between the parties was created when Miao purchased an airline ticket to fly with United. If United failed to perform its part of the contract because it discriminated against Miao on account of his race, the Complaint successfully raises a Section 1981

7

claim. *See Shebley*, 357 F. Supp. 3d at 692 ("Lebanese-American airline passengers who were removed from their flight stated [Section] 1981 claim against airline").

Thus, the Court must now determine if the Complaint plausibly alleges that United intentionally discriminated against Miao. *See Van v. Ford Motor Co.*, 2016 WL 1182001, at *3 (N.D. Ill. 2016) ("To survive a motion to dismiss, plaintiffs 'cannot plead discrimination in a conclusory fashion' but must plead facts to show or raise a plausible inference that the defendant discriminated against the plaintiffs based on their race") (cleaned up); *see also Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) ("To sufficiently state a cause of action the plaintiff must allege some facts that demonstrate that his race was the reason for the defendant's inaction"). "Discriminatory intent may [be] proven directly or indirectly." *Sartor v. Spherion Corp.*, 388 F.3d 275, 278 (7th Cir. 2004). "The same requirements for proving discrimination apply to claims under Title VII, [Section] 1981, and [Section] 1983." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, n.7 (7th Cir. 2010).

United argues that the Complaint fails to sufficiently allege that United intentionally discriminated against Miao. According to United, Miao fails to point to a comparable passenger not a member of his protected class who was "similarly situated" to Miao but treated differently. *See de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019) ("Discrimination may be inferred when an employer treats an employee in a protected class less favorably than it treats a similarly-situated employee outside that class"). "Similarly situated" means directly comparable "in all material respects."

8

*Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). Miao's Complaint does allege that other non-Asian passengers with similar bags were not asked to remove them from the overhead bin or removed from the flight. Dkt. # 1, ¶ 40. However, United argues that this allegation is not enough to show that those passengers were similarly situated to Miao because Miao defied the flight attendant's instructions multiple times. The Complaint makes no allegation that the non-Asian passengers also disobeyed direct instructions.

With all of the dangers inherent in flying as a passenger in these times, along with the regular inconveniences of cancelled flights, late arriving planes, and a myriad of other obstacles impeding one's enjoyment and the benefits supplied by air travel, this case involves nothing caused by these exigencies.

Stripped to its essentials, the essence of this litigation involves the placement of carry-on bags and who decides where they must be placed. As has been argued by United, the purchase of an airline ticket obligates the purchaser to follow the instructions of flight attendants. The purchase of an airline ticket carries with it an agreement to follow the instructions of flight attendants and other flight crew members.

After boarding the plane, Miao's Complaint states that he placed his two suitcases and a lunchbox in the overhead bin and sat down in his seat. Shortly thereafter, the flight attendant approached Miao and told him to move his lunchbox to under his seat. Instead of doing as she commanded, Miao grabbed his lunchbox and placed it on the empty seat next to him. When the flight attendant returned and told Miao again to

9

put the lunchbox under the seat, Miao did not do as instructed by the flight attendant but responded by stating the box contained food, and he would place it under the seat when the other passenger arrived.

By his own admissions in his Complaint, Miao was guilty of two instances of misconduct. It is not within the province of an airline passenger to direct where carry-on bags should be stowed. Federal aviation regulations require airlines to ensure that all carry-on baggage is properly stowed prior to take-off and further prohibit airline passengers from interfering with a crew member's performance of his or her duties. By disobeying the flight attendant's instructions, Miao's conduct violated his obligations as a passenger.

By introducing the concept of a "similarly situated" comparator in his Complaint in his attempt to establish a *prima facie* case of racial discrimination, it is essential that the comparator be similar in all respects. The "Caucasian passenger" alleged to fill that role was never confronted by a flight attendant or removed from the plane. Additionally, the Caucasian passenger is not alleged to have ignored or otherwise defied instructions from a flight attendant, permitting racial discrimination to be inferred in their better treatment.

The only reasonable inference to be drawn in this case, supplied principally by Miao's own conduct as outlined in his Complaint, is that he was not the victim of discrimination of any kind. Count II is dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, United's Motion to Dismiss [12] is granted as to both Count I and Count II. Civil case terminated. It is so ordered.

Dated: March 18, 2025

_____
Charles P. Kocoras
United States District Judge